270

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HOWARD MITCHELL CANTRELL, a/k/a Jody Cantrell, *et al.*,
Defendants-Appellants.

Fourth District   No. 13391

Opinion filed December 16, 1977.—Rehearing denied January 13, 1978.

Allen L. Dougherty, of Danville (Robert C. Hofman, of counsel), for appellants.

Thomas J. Fahey, State's Attorney, of Danville (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
After a joint trial by jury in the circuit court of Vermilion County,

defendants Howard M. Cantrell and Elizabeth A. Cantrell were each found guilty of (a) five counts charging unlawful possession of a controlled substance, each count charging possession of a separate substance, and (b) one count charging unlawful possession of cannabis, in an amount greater than 500 grams, with the intent to manufacture. The controlled substances of which possession was charged were: count I, lysergic acid diethylamide (LSD); count II, methylenedioxyamphetamine (MDA); count III, phencyclidine (PCP); count V, methaqualone; and count VI, secobarbital. The cannabis charges were contained in count IV. The court sentenced defendant Howard M. Cantrell to 2 to 10 years' imprisonment on the cannabis count and to 1 to 3 years' imprisonment upon each of the other counts. Elizabeth Ann Cantrell was sentenced to terms of 1 to 3 years' imprisonment on the cannabis charge and 1 year to 1 year and 1 day imprisonment for each of the other counts. As to each defendant, all sentences were ordered to run concurrently. Both defendants appeal.

■■ Prior to August 14, 1975, section 201 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1201) purported to authorize the Director of the Department of Law Enforcement, by following a certain procedure, to add additional substances to the list of controlled substances as then set forth in the Act. Methaqualone, the possession of which was charged against each defendant in count V, was not scheduled as a controlled substance by the legislature but was designated by the director to be so considered, effective March 1, 1974. The offenses were alleged to have occurred on September 13, 1974. In *People v. Avery* (1977), 57 Ill. 2d 182, 367 N.E.2d 79, the supreme court declared section 201 as it existed prior to August 14, 1975, to be unconstitutional.

■■ We deem the validity of the convictions entered upon count V to be properly before us. Because no valid statute made the possession of methaqualone a crime on September 13, 1974, we reverse the convictions and sentences as to that count with regard to each defendant.

Defendants' principal citations of error concern the question of whether their guilt was proved beyond a reasonable doubt. Whether they were in possession of the various substances alleged to be illegal is the first aspect of this question. The entire direct evidence on this point was the testimony of special agent Michael M. Watt of the Metropolitan Enforcement Group (MEG) for the area. He testified that, after obtaining a search warrant, he and other officers went to 1210 N. Robinson St., Danville, in the early morning hours of September 13, 1974. Watt stated that although he knocked on the door and a person in the residence peered around a curtain, he and the other officers were not admitted. After further futile knocking, the officers broke open the door and

entered, whereupon they saw a nude female who Watt identified at trial as defendant Elizabeth Ann Cantrell. He testified that he advised her to dress herself. Watt said that he then looked into a bedroom and found a person he identified as "Mr. Cantrell" undressed and sitting on the bed. Thereafter, the house was searched and no other people were found to be there. Watt stated that a life insurance payment book issued to "Howard N. Cantrell, 1210 Robinson, Danville, Illinois" (emphasis added) was found on the stereo in the living room of the house and that he also found in the house, a letter from a doctor addressed to "Howard Cantrell, Jr., 1210 N. Robinson St., Danville, Ill." The substances, the possesion of which is the subject matter of this case, were found in various places in the house but none were found on the person of either defendant.

■■ Defendant Howard Cantrell claims that he was not proved to have even been present in the house. No witness pointed to him in the courtroom and stated that he was present. The sole proof of his presence was several references by Watt to a "Mr. Cantrell" as being present in the house and as being the man sitting on the bed. Defendant argues that mere testimony referring to a person of the same name as defendant being present at the scene of the crime is not sufficient proof of the defendant's presence. He cites *People v. Dante* (1966), 35 Ill. 2d 538, 221 N.E.2d 409, where police officers testified to people with the same names as the defendants being present in a gambling house at the time of a raid. The supreme court ruled this testimony insufficient to prove the defendants' presence at the time. The State counters with *People v. Weathers* (1976), 40 Ill. App. 3d 211, 215, 351 N.E.2d 882, 886. There proof of a prior felony conviction of the defendant, a black female, was in issue. A witness described "the lady sitting in the chair" in the courtroom as having been the defendant in the prior case and also referred to the defendant in the prior case as "defendant, Mary Weathers." The court ruled that although two black women in addition to the defendant were sitting in the courtroom, the record indicated with reasonable clarity that the witness was referring to the defendant.

■■ During the opening statement, defense counsel stated: "Mr. Cantrell who is commonly called Jody—we all acquire a childhood nickname I guess—and his wife, Elizabeth, are the defendants here." Both were present at trial. Watt had pointed to the defendant Elizabeth Cantrell as the woman who was present at the house and referred to here as "Mrs. Cantrell." The situation here differs from that in *Dante* where the evidence merely showed that persons with the same names as defendants were present. Rather it is like that in *Weathers* in that within the context of the trial, it is clear that Watt was referring to the same Mr. Cantrell as was defense counsel. In view of the lack of any evidence that defendant Howard M. Cantrell was *not* present at 1210 N. Robinson at the time

of the execution of the search warrant, the jury could reasonably have determined beyond a reasonable doubt from Watt's testimony that the defendant Howard M. Cantrell was present at the house at the time the officers entered.

Both defendants maintain that regardless of whether the defendant husband was present in the house at the time of the search, neither of them was proved beyond a reasonable doubt to have been in possession of any of the illegal substances.

Possession can be proved by showing either actual or constructive possession. Here there is no evidence that either defendant had actual possession of any of the substances. In *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609, an accused was shown to have paid rent on an apartment where narcotics were found. Prior to the seizure, he had been observed entering the apartment alone and then leaving alone. The supreme court ruled that constructive possession may be proved by showing that the contraband was in a place under the immediate and exclusive control of the accused and that the evidence was sufficient for the jury to have determined that the accused did have possession of the contraband. In *People v. Heerwagen* (1975), 30 Ill. App. 3d 144, 332 N.E.2d 136, and *People v. Richard* (1975), 34 Ill. App. 3d 621, 339 N.E.2d 400, the evidence was found insufficient as a matter of law to prove possession. In *Heerwagen*, the accused was found reading a book while on a bed in an upstairs bedroom of a two-story house. Marijuana and various devices associated with its use were found nearby. No other evidence indicated that the defendant had control of the room. In *Richard*, the accused was found asleep on the couch of a one-room apartment being searched by police. No other evidence indicating his control of the apartment was presented, no personal belongings of his were found in the apartment and no showing was made that he frequently came to the apartment.

■■ In the case on appeal, a male and a female whom the jury could believe to have been husband and wife were shown to be in the house together in a state of undress. In the house was an insurance payment book and a letter. Each bore the name of a person having the same first and last name as the defendant husband and each indicated that the named person lived at the address where the seizure was being made. No one else was found in the house and no evidence was presented negating the defendants' exclusive possession of the premises. The jury could reasonably have concluded that the defendants' possession of the substances seized was proved beyond a reasonable doubt.

■■ Defendants also question whether proof beyond a reasonable doubt was made as to the analysis of all of the allegedly illegal substances and as to the weight of that which was alleged to be cannabis. In *People v.*

*Sanford* (1962), 24 Ill. 2d 365, 181 N.E.2d 118, proof of the nature of the allegedly illegal substance was ruled to be insufficient as a matter of law where the evidence revealed that, although a field test indicated that the substance was heroin, a later test by a police chemist could not identify the substance. Here each of the tests performed on the seized material by the State's chemist was shown to be conducted in a routine manner even though evidence was presented to show that further steps could be taken to insure even greater accuracy of the procedures. No evidence was presented that contradicted any finding by the forensic chemist making the tests. He also testified that the total cannabis seized weighed over 700 grams and contained but little dirt or mature stalk. The jury could have reasonably found beyond a reasonable doubt that the substances were what they were alleged to be and that the cannabis weighed over 500 grams.

■■ Defendants claim that conduct of the prosecutor deprived them of a fair trial. In closing argument the prosecutor stated that "no explanation" had been tendered for the existence of the various items of contraband in the room where the defendants had been sleeping. At times during the presentation of evidence and in closing argument, the prosecutor spoke of the defense counsel as having testified, described some of the defense cross-examination as "meaningless garbage talk" and implied that defense counsel had harassed prosecution witnesses. In *People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E.2d 230, *cert. denied* (1969), 396 U.S. 928, 24 L. Ed. 2d 225, 90 S. Ct. 262, the prosecutor stated in closing argument that no testimony had been presented to dispute the testimony of police officers. The supreme court ruled that when a prosecutor makes statements which could be interpreted as comments upon the failure of the defendant to testify, reversible error does not occur if the trial judge promptly sustains an objection to the comments and instructs the jury to disregard them. Here the court sustained an objection to the comments concerning the lack of explanation for the existence of the contraband and instructed the jury to disregard the remarks. The other statements fall short of those in *People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295, where the court ruled that the defendant was deprived of a fair trial because the prosecutor called the asserted defense preposterous, not believed even by defense counsel, and fraudulent. The conduct of the prosecutor here did not cause reversible error.

■■ Defendants complain that evidence of their commission of other offenses was improperly admitted. Agent Watt testified that a mechanism used to clean narcotic needles was found in the living room at 1210 N. Robinson and that a box containing two hypodermic needles and a syringe was found in the basement. He also testified over objection as to

the usual methods of packaging and as to the sales price of marijuana "lids." The commission of other crimes by an accused may be shown if relevant to an issue at trial. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The knowledge of an accused is an issue in a case charging possession of contraband. In *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385, the court ruled that testimony concerning the condition of a defendant's arm and his possession of needles, a tie rag and an eyedropper were relevant to prove his knowledge of the nature of a controlled substance which he was alleged to possess. Even if the equipment found at 1210 N. Robinson could not be used with any of the substances defendants were charged with possessing, the possession of this equipment, usable for ingestion of other drugs, is relevant in showing that defendants knew that the items they possessed were contraband. Although a sale is not an element of the manufacture of cannabis (Ill. Rev. Stat. 1973, ch. 56½, par. 703(h)) evidence of a plan to sell cannabis would be evidence of a plan or scheme to manufacture it. No error occurred in the rulings on this evidence.

■■ Defendants also complain that a box of plastic baggies found next to some scales which were on the dresser in the bedroom at 1210 N. Robinson was improperly admitted into evidence over their objection. The item had not been listed by the prosecution in its discovery statement of exhibits which it intended to introduce into evidence. Defendants did not request a recess or continuance to examine the items at the time of their offer. No question of the application of the doctrine of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, is involved as the baggies were not favorable to the defendants. No showing was made that the withholding was intentional. Although the presence of the baggies was strongly probative of an intent to manufacture cannabis, other strong proof of that intent was also before the jury. Under all of the circumstances, we do not deem admission of the exhibit to be reversible error.

■■ When informing the jurors that they might take certain exhibits with them to the jury room, including some of those containing substances alleged to be contraband, the judge told them to be careful of the exhibits and not to open some of them "due to the nature of the product as alleged." Defendants claim this statement told the jury, in effect, that the items were in fact contraband. Whether any of the persons on the jury interpreted the statement as defendants do is questionable. In any event, had defendants objected at the time the judge made the statement, he could have clarified or corrected the statement to make clear that he was not stating any opinion as to the actual nature of the substances in the exhibits. No plain error occurred in the making of the

statement and by failing to object at that time defendants waived the point.

For the reasons stated, the judgments of conviction and sentence on count V are reversed. All other judgments appealed are affirmed.

Reversed in part, affirmed in part.

TRAPP and MILLS, JJ., concur.