UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————————

August Term, 2011

(Argued: February 17, 2012                    Decided: October 25, 2012)

Docket No. 11-915

—————————————

UNITED STATES OF AMERICA,

*Appellant*,

v.

ERIC C. WILSON, AKA ERIC WILSON,

*Defendant-Appellee*.

—————————————

Before: JACOBS, *Chief Judge*, CALABRESI and POOLER, *Circuit Judges*.

The United States of America appeals from an order of the United States District Court

for the Northern District of New York (David N. Hurd, *Judge*), suppressing evidence found

following the stop and subsequent search of a vehicle driven by defendant Eric C. Wilson. *See*

*United States v. Wilson*, 754 F. Supp. 2d 450 (N.D.N.Y. 2010). The vehicle stop was executed

by two tribal police officers, one of whom was cross-designated as a U.S. customs officer. The

district court concluded that the vehicle stop violated the Fourth Amendment because the

officers acted without valid law enforcement authority, having stopped the vehicle in breach of

jurisdictional boundaries set by state law and without having obtained prior authorization to

exercise customs authority as required by federal policy governing designated customs officers.

On appeal, the government does not dispute that the officers stopped Wilson in violation of state law and federal policy but argues that neither breach violates the Fourth Amendment. We hold that the violation of the federal policy governing designated customs officers did not violate the Fourth Amendment, and that the stop and subsequent search comported with the Fourth Amendment because they were justified by probable cause. We do not reach the question whether the stop was also a constitutional exercise of the officers' New York police authority.

Reversed and remanded.

_____

BRENDA K. SANNES, Assistant United States Attorney, Northern District of New York (Richard S. Hartunian, United States Attorney, Elizabeth Horsman, Assistant United States Attorney, *on the brief*), Syracuse, N.Y., *for Appellant*.

MICHAEL RHODES-DEVEY, Albany, N.Y., *for Appellee*.

MARSHA K. SCHMIDT, Hobbs, Straus, Dean & Walker, LLP (John Tabinaca Plata, *on the brief*), Washington, D.C., *for Amicus Curiae St. Regis Mohawk Tribe*.

*POOLER*, Circuit Judge:

The United States of America appeals from an order of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*), suppressing evidence found following the stop and subsequent search of a vehicle driven by defendant Eric C. Wilson. *See United States v. Wilson*, 754 F. Supp. 2d 450 (N.D.N.Y. 2010). The vehicle stop was executed by two officers of the St. Regis Mohawk Police Department ("SRMPD"), one of whom was also cross-designated as a U.S. customs officer by the Department of Homeland Security U.S. Immigration and Customs Enforcement ("ICE"). The district court held that the vehicle stop violated the Fourth Amendment because the officers lacked the authority to act as law

2

enforcement officers at the time of the stop. The court reasoned that the officers could not validly act as police officers under New York law because they stopped the vehicle outside their territorial jurisdiction and that they could not validly exercise customs authority because they had not obtained prior authorization as required by ICE policy governing designated customs officers.

On appeal, the government does not dispute the district court's determinations that the officers stopped Wilson in violation of New York law and ICE policy. The government instead argues that neither breach violates the Fourth Amendment because, under *Virginia v. Moore*, 553 U.S. 164, 172 (2008), the Fourth Amendment does not incorporate state law or agency procedures or requirements. We hold that the violation of the ICE policy requiring prior authorization did not affect the constitutionality of the stop under the Fourth Amendment and that the stop and subsequent search comported with the Fourth Amendment because they were justified by probable cause. Accordingly, we reverse the decision of the district court. Because we determine that the stop was a constitutional exercise of designated customs authority, we do not decide whether the stop was also a constitutional exercise of New York police authority.

## BACKGROUND

Defendant Eric Wilson was arrested following a vehicle stop by Detective Sergeant Matthew Rourke and Investigator Peter Barnes of the SRMPD near the United States-Canada border in northern New York, just outside the St. Regis Mohawk reservation.[1] Two U.S. Border

---

[1] It was undisputed below that the vehicle stop took place outside St. Regis Territory, and the district court proceeded on basis of that stipulation. *See Wilson*, 754 F. Supp. 2d at 454. On appeal, amicus curiae St. Regis has informed this court that these locations are within territory that is the subject of a pending land dispute between St. Regis and the State of New York. *See Canadian St. Regis Band of Mohawk Indians v. New York*, No. 5:82-cv-783

3

Patrol agents arrived on the scene and searched the vehicle, turning up three duffel bags filled with marijuana. The agents took Wilson into custody. A grand jury indicted Wilson on one count of possession with intent to distribute fifty kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1).

## I.

Wilson moved to suppress the evidence obtained in the search of his vehicle as the fruit of an unconstitutional vehicle stop and search. The district court held an evidentiary hearing, and made the following findings.

## A.

The St. Regis Mohawk Reservation (the "Reservation") abuts the border between the United States and Canada. The Reservation is part of the Akwesasne Mohawk Territory, which extends over the border to include the Akwesasne Mohawk reservation in Canada. At certain points within the Territory, a vehicle can travel to and from the United States without passing through a port of entry designated by U.S. Customs.

Wilson is a citizen of the United States. At the time of the vehicle stop, his driver's license indicated that he lived in St. Regis Falls, New York. St. Regis Falls lies approximately 45 minutes southwest of the location of the vehicle stop. Wilson is not a member of a federally recognized tribe in the United States, nor does he have any equivalent status in Canada.

---

(N.D.N.Y. filed July 27, 1982). The parties acknowledge the dispute but do not request remand for fact-finding on this issue. As explained below, whether vehicle stop took place outside St. Regis territory does not affect the outcome of this appeal. For the purposes of this appeal, we assume that these locations were outside St. Regis territory, but we express no view as to whether this assumption is correct either as a legal or factual matter.

4

Sgt. Matthew Rourke and Inv. Peter Barnes were officers of the SRMPD, the tribal police department for the St. Regis Mohawk tribe. Under New York law, members of the SRMPD had full authority to act as New York police officers within the boundaries of the St. Regis Reservation, *see* N.Y. Indian Law § 114(1), (2); N.Y. Crim. Proc. Law § 1.20(34)(u), but beyond the reservation they were without authority to "exercise the duties or functions of a police officer" (subject to limited exceptions not relevant here), *see* N.Y. Indian Law § 114(8).

In addition, Sgt. Rourke was one of two SRMPD officers cross-designated as a U.S. customs officer by ICE. *See* 19 U.S.C. § 1401(i) (providing for cross-designation of customs officers).[2] At the suppression hearing, the district court received into evidence the form designating Rourke a customs officer ("Designation form"), an ICE Office of Investigations Directive ("ICE Directive") outlining policies governing designated customs officers, and an excerpt from the Memorandum of Understanding ICE executed with the SRMPD concerning the designation ("MOA"). Wilson stipulated at the suppression hearing that this designation paperwork was in order.

The Designation form, ICE Directive, and MOA set forth the guidelines for Rourke's use of his customs authority. The Designation form provided that Rourke was "subject to all

---

[2] Section 1401(i) authorizes cross-designation by defining "customs officer" to include "any agent or other person . . . designated by the Secretary of the Treasury to perform any duties of an officer of the Customs Service." The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. § 101 *et seq.*), abolished the Customs Service and transferred its functions to the Department of Homeland Security, and leadership authority to the Secretary of the Department of Homeland Security. *See id.* § 403(1) (codified at 6 U.S.C. § 203). The Secretary delegated to ICE the authority to designate customs officers under 19 U.S.C. § 1401(i). *See* Department of Homeland Security Delegation Number 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement* § 2(A) (Nov. 13, 2004).

5

guidelines, directives and instructions of ICE" when acting as a Customs officer. The form required that he contact the appropriate ICE Special Agent in Charge ("SAC") or Resident Agent in Charge prior to conducting any examination or search of a vehicle. The ICE Directive provided that "the authority of a designated Customs Officer is valid anywhere within the United States . . . and may be exercised as such, provided that a SAC is consulted and approval is received from that SAC." Further, the ICE Directive "strictly prohibited" a designated Customs Officer's "[u]se of [customs] authorities without first having been coordinated and approved by the appropriate SAC." Finally, the MOA provided that ICE designations "will be used only for the duration of the specified law enforcement activity for which the approval was extended, and to the extent of such approval." Both the MOA and the ICE Directive include language disclaiming that they confer any private rights.

## B.

On the morning of Wilson's arrest, Sgt. Rourke was monitoring radio traffic from his office in Hogansburg, New York, on the Reservation. At approximately 9:00 a.m., Officer Virginia Johnson of the SRMPD reported over the radio that she had seen a white man driving north in a green Pontiac Bonneville, heading toward an unguarded, unmarked crossing into Quebec. The Akwesasne Mohawk police in Canada reported back that they had located the vehicle and driver in Quebec, and had seen the vehicle reenter the United States through the same unmarked crossing through which it had exited.

Within minutes of hearing that the green Bonneville had returned to the United States, Sgt. Rourke and Inv. Barnes left the police station in a police vehicle and soon found the

6

Bonneville at a truck stop outside St. Regis territory. They observed that its rear license plate was obstructed by snow and road debris.

At approximately 9:17 a.m., after following the vehicle for a short distance outside the reservation, the officers stopped the vehicle. They did not contact any ICE official prior to making the stop. Upon questioning, the driver identified himself as Eric C. Wilson (the defendant before us) and said he was on his way from his home in St. Regis Falls, New York, to go to work for a man named Phillip Tarbell. A record check showed that the vehicle was registered to Phillip Tarbell, who, the officers knew, had recently been arrested with approximately twenty pounds of marijuana. At some point, Officer Johnson arrived and identified both Wilson and the Bonneville as the driver and vehicle that she had earlier observed.

Around the time that Sgt. Rourke learned that Phillip Tarbell was the registered owner of the vehicle, Sgt. Rourke telephoned ICE Agent in Charge Mario Fiacco, and obtained Agent Fiacco's authorization to search the vehicle under his designated customs authority. Sgt. Rourke then conducted a second interview with Wilson. Wilson repeated his earlier account that he was coming from his home in St. Regis Falls, was on his way to work, and had stopped for gas at the truck stop without making any other stops. Upon Sgt. Rourke's asking if Wilson had not, in fact, been to Canada, Wilson admitted he had been to Quebec and told Sgt. Rourke that he had done so to see a friend. Sgt. Rourke asked if Wilson had gone to Quebec to "score a little," to which Wilson responded that he had visited the friend in Canada to obtain a small quantity of marijuana before going to work. He also admitted that he was in possession of a marijuana pipe.

Sgt. Rourke had not conducted any search when U.S. Border Patrol Agents Justin Chamberlain and David Marston arrived at the scene. Agent Chamberlain interviewed Wilson,

7

who again admitted that he was returning from Canada and that he had a marijuana pipe. Agent Chamberlain searched the vehicle and found three duffel bags containing a green leafy substance that a field test determined to be marijuana.

## II.

Based on these findings, the district court granted the motion to suppress and affirmed that order on reconsideration. The district court concluded that the stop was unconstitutional because Sgt. Rourke and Inv. Barnes were without lawful authority to act—either in their capacity as SRMPD officers or in Sgt. Rourke's capacity as a designated customs officer—when they made the stop. The court reasoned that Sgt. Rourke could not validly act as a designated customs officer when he stopped the vehicle because he had not obtained prior authorization to exercise customs authority as required by the ICE Directive. The court determined that Sgt. Rourke and Inv. Barnes could not validly act as police officers under New York law because they effected the stop outside of their territorial jurisdiction, the stop did not come within any exception to the limitation on their jurisdiction, and the stop was not a valid citizen's arrest under New York law. The government now appeals.

## DISCUSSION

On appeal, the government argues that the district court erred in granting Wilson's suppression motion because the vehicle stop was justified under applicable Fourth Amendment standards and because neither the officers' breach of their jurisdictional boundary nor their failure to comply with the ICE Directive had any bearing on the stop's constitutionality under the Fourth Amendment. We hold that the stop comported with the Fourth Amendment because Sgt. Rourke, acting in his capacity as a cross-designated customs officer, had probable cause to

8

stop the vehicle for a violation of federal law. We agree with the government that the failure to comply with the ICE Directive did not render the stop unconstitutional under the Fourth Amendment, and we therefore do not reach the separate question whether the breach of the state jurisdictional boundary violated the Fourth Amendment.

## I.

In an appeal from a district court's ruling on a motion to suppress, we review legal conclusions de novo, *Ornelas v. United States*, 517 U.S. 690, 699 (1996), and findings of fact for clear error, *United States v. Simmons*, 560 F.3d 98, 103 (2d Cir. 2009).[3] Determinations of probable cause are mixed questions of law and fact that we review de novo, reviewing the underlying "findings of historical fact only for clear error and . . . giv[ing] due weight to inferences drawn from those facts by resident judges and law enforcement officers." *Ornelas*, 517 U.S. at 699.

## II.

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to vehicle stops. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "[T]he Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the

---

[3] Our decisions conflict as to whether we should view those findings in the light most favorable to the government or in the light most favorable to Wilson. *Compare, e.g.*, *United States v. Barner*, 666 F.3d 79, 82 (2d Cir. 2012) (considering findings of fact underlying grant of motion to suppress in light most favorable to the government, although the government did not prevail below), *and United States v. Howard*, 489 F.3d 484, 490 (2d Cir. 2007) (same), *with, e.g.*, *United States v. Williams*, 681 F.3d 35, 40 (2d Cir. 2012) (viewing facts in light most favorable to prevailing party), *and United States v. Harrell*, 268 F.3d 141, 145 (2d Cir. 2001) (same). We do not resolve this conflict because the outcome would be the same under either standard of review.

person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Harrison*, 606 F.3d 42, 45 (2d Cir. 2010) (citation and internal quotation marks omitted).[4]  Probable cause to make a stop exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the [suspect] has committed or is committing a crime." *United States v. Delossantos*, 536 F.3d 155, 158-59 (2d Cir. 2008) (internal quotation marks omitted).

In addition, "[t]he touchstone of . . . analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (internal quotation marks omitted).  This reasonableness inquiry generally entails "assessing, on the one hand, the degree to which [a seizure] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Virginia v. Moore*, 553 U.S. 164, 171 (2008).

In *Whren*, the Court held that a case-by-case balancing of all factors bearing on the reasonableness of a seizure is not usually necessary when a seizure is justified by probable cause because, as a general matter, "probable cause to believe the law has been broken outbalances private interest in avoiding police contact." *Whren*, 517 U.S. at 818 (internal quotation marks

---

[4]  Different requirements govern vehicle stops at the international border or its functional equivalent because there "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Here, while the government argued below that the stop took place at the functional equivalent of the border, the government does not press this argument on appeal and argues only that the stop was justified under the standard Fourth Amendment requirements of probable cause or reasonable suspicion. *See* Appellee's Br. 5 n.3.

omitted).  The Court allowed, however, that not every search or seizure justified by probable cause necessarily satisfies the Fourth Amendment.  A search or seizure supported by probable cause may be unreasonable in violation of the Fourth Amendment if it is "conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests—such as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body."  *Id.* at 818 (citations omitted).

Applying these principles to a vehicle stop justified by probable cause but made in violation of a local regulation limiting plainclothes officers' authority to enforce traffic laws, the Court in *Whren* concluded that the violation of the regulation did not affect the reasonableness of the stop for Fourth Amendment purposes because "[t]he making of a traffic stop out of uniform does not remotely qualify as such an extreme practice."  *Id.*  More broadly, the *Whren* Court suggested that such local police enforcement practices generally have no bearing on the reasonableness of a search or seizure because such practices, "even if they could be practicably assessed by a judge, vary from place to place and from time to time;" the court rejected the implication that "the search and seizure protections of the Fourth Amendment are so variable and can be made to turn upon such trivialities."  *Id.* at 815 (citations omitted).

In *Moore*, the Supreme Court held that officers who had probable cause to arrest a suspect did not, by doing so in contravention of a state law limiting the circumstances under which an officer could make an arrest for certain offenses, violate the Fourth Amendment. Reaffirming *Whren*, the Court explained that "[w]e thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices—even practices set

11

by rule." *Moore*, 553 U.S. at 172. The Court thus concluded that "while States are free to regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176.

Read together, *Moore* and *Whren* stand for the proposition that the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and that the violation of such restrictions will not generally affect the constitutionality of a seizure supported by probable cause.

### III.

Applying these principles to this appeal, we conclude that the district court erred in granting Wilson's motion to suppress. First, the stop was justified by probable cause to believe that Wilson had entered the United States in violation of federal law. Second, as a validly designated customs officer, Sgt. Rourke was authorized to effect the stop, and his violation of the ICE Directive—an internal agency policy—did not give rise to a Fourth Amendment violation because the Directive's prior authorization requirement did not implicate any interest protected by the Fourth Amendment.

### A.

We begin our analysis by determining whether the vehicle stop was justified by probable cause to believe that Wilson had committed or was committing a crime. Based on the district court's findings of fact, we conclude that it was. First, the officers had probable cause to believe that Wilson had intentionally failed to enter the United States at an officially-designated border crossing in violation of 19 U.S.C. §§ 1433(b)(1) and 1436(a)(1), (c).[5] At the time the officers

---

[5] 19 U.S.C. § 1433(b)(1) provides that "[v]ehicles may arrive in the United States only at border crossing points designated by the Secretary." Section 1436, in turn, makes it unlawful to

stopped the vehicle, they were aware that the vehicle had left and reentered the United States in a brief period of time at an unguarded, undesignated border crossing. In addition, because (as the district court found) the officers had observed that the license plate was covered by snow and road debris, the officers had probable cause to believe that Wilson had violated Section 402(1)(b) of the New York Vehicle and Traffic Law by driving with an obstructed license. *See* N.Y. Veh. & Traf. Law § 402(1)(b), (8).

**B.**

We next address whether Sgt. Rourke's violation of the ICE Directive's requirement of obtaining prior authorization rendered the stop unconstitutional. The district court and Wilson appear to have assumed that the failure to follow the requirements of the ICE Directive was sufficient to warrant suppression. Such an assumption is untenable in light of *Moore* and *Whren*.

The ICE Directive that Rourke violated provided that a designated customs officer's "[u]se of [customs] authorities without first having been coordinated and approved by the appropriate SAC is strictly prohibited." Wilson has not suggested, however, that, as a general matter, the Fourth Amendment requires an officer to obtain supervisory authorization prior to making a vehicle stop justified by probable cause, nor are we aware of any authority that could

---

fail to comply with Section 1433, *see* 19 U.S.C. § 1436(a)(1), and provides a criminal penalty for any intentional violation, *see* 19 U.S.C. § 1436(c). As the government acknowledges on appeal, "[i]n district court the government cited to § 1433, and referred to Wilson's entry as illegal, without citing to § 1436." Appellee Br. 21 n.15. The government thus failed to provide the court with the authority to demonstrate that violating Section 1433(b)(1) is a federal crime. While "[w]e normally will not reverse a judgment on the basis of an argument that was not made to the district court," *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 207 (2d Cir. 2003), we have the discretion to consider a new argument "where the issue is purely legal and there is no need for additional fact-finding," *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996). Here, because the question of whether the intentional violation of Section 1433(b)(1) is a criminal offense is a wholly legal issue that is not disputed on appeal, we exercise our discretion to consider it.

13

support such a suggestion. *Cf. United States v. Caceres*, 440 U.S. 741, 744 (1979) (holding that IRS agents did not violate the Fourth Amendment by conducting surveillance in violation of regulations requiring prior authorization because "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants"). Instead, Wilson's Fourth Amendment argument rests entirely on the fact Sgt. Rourke violated the prohibition in the ICE Directive. This argument fails in light of *Moore* and *Whren*. Nothing about the Fourth Amendment elevates an internal law enforcement agency directive regarding the chain of command to constitutional significance.

*Whren* allows that a stop supported by probable cause may be unreasonable if it is executed in an "extraordinary manner," but Rourke's failure to seek authorization does not present such a case because it does not implicate Wilson's privacy or physical interests. *See Whren*, 517 U.S. at 818. Indeed, the violation of the ICE Directive is materially indistinguishable from the violations at issue in *Whren* and *Moore*, and it is therefore subject to the general rule that local practices "do not alter the Fourth Amendment's protections." *Moore*, 553 U.S. at 176; *accord United States v. Felipe*, 148 F.3d 101, 109 (2d Cir. 1998) ("[S]uppression is not an available remedy for violations of agency regulations that fail to raise constitutional questions.").

In addition, we observe that the district court erred in suggesting that Sgt. Rourke was utterly without authority to act as a designated customs officer when he effected the stop in violation of the ICE Directive. Wilson stipulated that Rourke was a validly designated customs officer. Nothing in the statute defining "customs officer" conditions that status on compliance

14

with agency directives. *See* 19 U.S.C. § 1401(i). Thus, we need not address whether lack of valid status as a law enforcement officer would affect the constitutionality of a law enforcement action under *Moore* and *Whren* because Sgt. Rourke's violation of the ICE Directive had no bearing on the validity of his status as a designated customs officer.

## C.

Because we determine that the district court erred in concluding that Rourke's failure to seek prior authorization under the MOA rendered him without authority to act and violated the Fourth Amendment, we need not—and do not—reach the separate question whether the officer's violation of the state jurisdictional statute at issue in this case is controlled by *Moore* and *Whren* such that this state law violation does not affect the reasonableness of the stop.

At oral argument, the government stated that, under its interpretation of *Moore*, a hypothetical child welfare officer from Wyoming could conduct a law enforcement action in New York City without offending the Fourth Amendment, so long as the action was justified by the requisite level of suspicion. The government's position that *Moore* renders geographical jurisdictional limitations irrelevant to the Fourth Amendment would, if accepted, have far-reaching effects. Because a decision on the scope of *Moore* is unnecessary to resolving this appeal, we need not and hence do not reach this question.

## IV.

Wilson's suppression motion also challenged the validity of Agent Chamberlain's search of the vehicle. The district court did not reach this question, but, based on the district court's findings of fact, we conclude that the search did not violate the Fourth Amendment.

15

Under the "automobile" exception to the warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime. *United States v. Ross*, 456 U.S. 798, 820-21 (1982); *Carroll v. United States*, 267 U.S. 132, 153-54 (1925). Probable cause to conduct a search "exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (internal quotation marks and alterations omitted).

"The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross*, 456 U.S. at 824. Thus, "[w]here the probable cause upon which the search is based extends to the entire vehicle, the permissible scope of the search pursuant to this exception includes every part of the vehicle and its contents including all containers and packages that may conceal the object of the search." *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (internal quotation marks and alterations omitted).

Here, the question is whether Agent Chamberlain had probable cause to believe that Wilson had contraband in his vehicle, including the trunk. According to the district court's findings, at the time of the search, the officers were aware of the following facts: Wilson was driving a vehicle registered to a man named Phillip Tarbell, who had recently been arrested with a large quantity of marijuana; Wilson had lied about having crossed the border at a non-designated border crossing point, and had then admitted to lying; and Wilson admitted that he had a marijuana pipe in his possession and that he had "scored a little" marijuana across the

16

border.  In light of this information, the vehicle search was justified by probable cause to believe that the vehicle contained contraband—namely, marijuana smuggled over the border.

We therefore conclude that both the stop and search of the vehicle comported with the Fourth Amendment and that Wilson's suppression motion was granted in error.

## CONCLUSION

For the reasons stated above, the judgement of the district court hereby is REVERSED and the case is REMANDED to the district court for the entry of an order denying Wilson's motion to suppress the evidence.