THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*. NORMAN TAYLOR, Defendant-Appellant.

(No. 59993;

First District (4th Division)—July 9, 1975.

James J. Doherty, Public Defender, of Chicago (Saul H. Brauner and Thomas E. Finegan, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney of Chicago (Laurence J. Bolon, Donald M. Devlin, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Norman Taylor, was charged with the offense of unlawful use of weapons in two separate indictments. Indictment 72—3467 charged him with carrying a concealed weapon in violation of section 24—1(a)(4) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 24—1(a)(4)), and indictment 73—2167 charged the defendant with carrying a loaded revolver in violation of section 24—1(a)(10) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 24—1(a)(10)). Both indictments carried a second count charging the defendant with the unlawful use of weapons within 5 years of his release from prison in violation of section 24—1(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 24—1(b) ). The defendant was found guilty on both indictments at a bench trial. The judgment on indictment 73—2167 was vacated and Taylor was sentenced to a term of 2 to 6 years in the Illinois State Penitentiary.

Three issues are raised in the instant appeal: (1) Whether the weapon which defendant had was actually concealed; (2) whether defendant's act in holding a weapon was justified by necessity; and (3) whether the defendant's right to a jury trial was impaired because under the enhanced penalty procedure of the unlawful use of weapons statute his prior offense would have been revealed to the jury.

The State called Officer Patrick Logan who testified that at approximately 4:15 a.m. on April 8, 1972, he and his partner, Officer Ferer, received a communication over their radio and proceeded to the Alamac

Hotel at 1934 West Jackson in the city of Chicago. The officers entered the lobby of the hotel where they observed the defendant. Officer Logan stated that the defendant had his hand in his right coat pocket, with what the officer thought to be a gun handle sticking out of that pocket, and he had his hand on the gun handle. Officer Logan immediately ordered Taylor to put his hands up and then disarmed the defendant while his partner covered him. The defendant told the officers that he removed the gun from the hotel registration desk to protect himself from the "Stones." However, on redirect, the officer testified that he did not see any young men while approaching the area or during the time he was there.

After Officer Logan completed his testimony, the parties stipulated that the defendant was convicted of robbery in 1970; that he was sentenced to a term of 2 to 3 years in the Illinois State Penitentiary and was conditionally released from prison on September 16, 1970.

The defendant called three witnesses, the first of whom was Louis Cook, a resident of the Alamac Hotel. Cook, who was returning to the hotel, testified that he saw a car around the corner from the Alamac with four men inside, one man had a shotgun, and he saw two men as he entered the hotel. Cook stated that the defendant was behind the hotel manager's desk holding a gun and looking scared. Cook also testified that he walked around the desk and told the defendant and the manager about the men he had observed outside. However, on cross-examination, Cook stated that he did not see any of the men, the four in the car or the two in front of the hotel, when the police arrived.

Defendant's mother testified that she received a call from her son, at approximately 2 a.m., and instructed him to call the police so they could bring him home.

Norman Taylor was the last witness. He testified that he had been visiting a Miss Jones on South Seeley. When he left Miss Jones' residence, around 2 a.m., he was chased to the Alamac Hotel by two or three men who identified themselves as "Blackstones." Taylor stated that he ran into the hotel, aroused Leslie Jackson, the manager, who was asleep in the office, and called his mother. Then he called the police and, since he waited for over an hour for them to arrive, Taylor was forced to call them a second time. Defendant further testified that he picked up the gun from the manager's desk in order to protect himself from the men he saw waiting outside. He turned the gun over to the police, butt end first, immediately after their arrival. In concluding, defendant stated that as he was being escorted from the hotel he saw the men who chased him sitting in a second-story window, but when he pointed them out to the police, they did not bother to look up.

■■  The threshold question to be disposed of is whether the gun in the instant case was in fact concealed. Defendant contends that he called police for help and that he picked up the gun to protect himself. Defendant further contends that the weapon in his possession was visible, recognizable as a weapon, and not concealed from ordinary observation. Therefore, he submits that the State failed to prove that the gun was concealed within the meaning of section 24—1(a)(4) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 24—1(a)(4)). However, we disagree with the defendant's contentions because in Illinois a weapon is concealed within the meaning of the statute even if there is some notice of its presence; all that is required is that it be concealed from ordinary observation. *People v. Zazzetti* (1972), 6 Ill.App.3d 858, 862, 286 N.E.2d 745.

This is the result that was reached in *People v. Colson* (1973), 14 Ill. App.3d 375, 376, 302 N.E.2d 409, a case where the police while patrolling initially observed the defendant from across the street, but when they approached him and reached a point some 15 to 20 feet from where he was standing, they noticed a weapon protruding from his overcoat. The court found defendant guilty of carrying a concealed weapon and relied heavily on *People v. Euctice* (1939), 371 Ill. 159, 20 N.E.2d 83, a case which our supreme court stated the test for determining when a gun is concealed:

"The statute does not mean that the firearm shall be carried in such a manner as to give absolutely no notice of its presence. It merely means that the firearm shall be concealed from ordinary observation." 371 Ill. 159, 162, 20 N.E.2d 83, 85.

In the case we are reviewing Officer Logan testified that the gun was in defendant's pocket, and defendant's hand covered the butt of the firearm. We feel that under *Zazzetti* and *Colson* the gun was concealed from ordinary observation, which is all that the statute requires. Defendant relies on *People v. Crachy* (1971), 131 Ill.App.2d 402, 268 N.E.2d 467, a case where defendant's unlawful use of weapons conviction was reversed since there was no evidence to indicate a covering or obstruction that would impede recognition of the weapon as such; but, the trial court, the finder of fact, found that the weapon was covered or obstructed and obviously believed the testimony of the police officer and not that of the defendant who testified that he held the gun in his hand and immediately relinquished control of the weapon to the police when they arrived. Since a reviewing court does not substitute its judgment on questions such as the weight to be accorded disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses, we feel that the decision of the

trial court should stand. *People v. Novotny* (1968), 41 Ill.2d 401, 412, 244 N.E.2d 182.

The defendant's next contention is that he was not guilty of the unlawful use of weapons charge because he acted out of necessity, and he was attempting to protect himself from serious harm. Defendant argues that his only motivation for picking up the hotel manager's gun was to protect himself from the armed men outside the hotel. He submits that his testimony coupled with that of his witnesses establishes the affirmative defense of necessity as set out in section 7—13 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 7—13). Section 7—13 provides:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

We must now determine if the defendant's conduct was reasonable and justifiable by reason of necessity.

There are two recent decisions of this court that have considered this question and made definitive statements. In *People v. Warlick* (1973), 13 Ill.App.3d 276, 300 N.E.2d 834 (abstract opinion), the defendant contended that he disarmed a friend in order to prevent bodily harm to people standing in a crowd. The court held that defendant's belief that someone would get hurt was not the type of necessity that would justify concealment under section 7—13 of the Criminal Code.

A similar result was reached by this court in *People v. Ballard* (1974), 17 Ill.App.3d 275, 307 N.E.2d 604 (abstract opinion). In *Ballard* the defendant disarmed a boy to prevent injury to others, but this court, relying on *Warlick*, held that defendant failed to establish the requisite necessity to justify or excuse concealment of the weapon.

■■ It is true, as defendant argues, that necessity is an affirmative defense (Ill. Rev. Stat. 1971, ch. 38, § 7—14) which must be raised by the pleadings or the evidence. Furthermore, once raised, the State does have the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. (Ill. Rev. Stat. 1971, ch. 38, § 3—2.) However, in the instant case, we do not feel that defendant's acts were justifiable since defendant failed to establish that an actual situation existed that mandated concealment of the weapon. Therefore, since the defense was never established, it was unnecessary for the State to prove defendant's guilt as to this issue.

Defendant's final contention is that the unlawful use of weapons enhanced penalty procedure, which statutorily requires that defendant's prior convictions be proved as an element of the offense, prejudices juries

against defendants because they acquire knowledge of the accused's previous convictions. The defendant argues that the statutory procedure results in unjustified guilty pleas and jury trial waivers, thereby chilling the assertion of constitutional rights, namely, the sixth amendment right to a jury trial, by penalizing defendants, like the one in the instant case, who would like to exercise the right but chose not to. Defendant argues that section 24—1(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 24—1(b)) is unconstitutional as construed and applied. He submits that *United States v. Jackson* (1968), 390 U.S. 570, 20 L.Ed.2d 138, 88 S.Ct. 1209, a case that involved a section of the Federal Kidnapping Act, is authority for his position. In *Jackson* the Act provided for the death penalty if the verdict of the jury so recommended, but the statute did not provide a similar penalty for the defendant who waived the right to a jury trial or for the one who pled guilty. The Supreme Court held that the selective death penalty provision of the Federal Kidnapping Act was unconstitutional since it needlessly penalized the assertion of constitutional rights.

Although we find the defendant's argument very persuasive, it is well settled in Illinois that proof of a prior felony conviction is the *sine qua non* of the offense of unlawful use of weapons within 5 years of a prior conviction. (*People v. Weaver* (1968), 41 Ill.2d 434, 243 N.E.2d 245, *cert. denied,* 395 U.S. 959, 23 L.Ed.2d 746, 89 S.Ct. 2100; *People v. Owens* (1967), 37 Ill.2d 131, 132, 225 N.E.2d 15; *People v. Ostrand* (1966), 35 Ill.2d 520, 529, 221 N.E.2d 499.) In *Ostrand* the defendant maintained that the court erroneously allowed the prior offense allegation of the indictment to stand and permitted subsequent proof that defendant had been convicted of a felony within 5 years of the date of the offense. The court held, however, that it was not only proper to allow the allegation and proof of a prior felony conviction, but it was necessary in order to prove defendant's commission of the felony of carrying a concealed weapon. A similar result was reached in *People v. Owens* (1967), 37 Ill. 2d 131, 225 N.E.2d 15, where defendant alleged that he was deprived of a fair trial because the trier of fact was informed of his prior conviction. The court, relying on its decision in *Ostrand,* approved the procedure of proving prior felony convictions.

■■ In light of the preceding, it is clear that the Supreme Court of Illinois has upheld the constitutionality of section 24—1(b) of the Criminal Code which requires that prior felony convictions be alleged and proved as an element of the offense. The Supreme Court of the United States has also approved the procedure that is being challenged in the instant case. (*Spencer v. Texas* (1966), 385 U.S. 554, 17 L.Ed.2d 606, 87 S.Ct. 648.) In *Spencer* the petitioner claimed that the use of prior con-

victions. in current criminal trials of each defendant was unfair and offended the due process clause of the fourteenth amendment. The Court, in the road to its decision, points out that recidivist statutes and other enhanced sentence laws and procedures designed to implement their underlying policies, have been enacted in all states, by the Federal government as well, and approved by the courts. The Court holds at page 564:

> "In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases."

█▌ After reviewing the applicable law, we find defendant's argument challenging the constitutionality of section 24—1(b) of the Criminal Code to be without merit. We are well aware of the fact that under the enhanced penalty procedure the jury learns of prior offenses committed by the defendant; however, we feel the possibility of prejudice to defendant is outweighed by the State's interest in protecting its citizenry by keeping firearms out of the hands of convicted felons. Moreover, defendant's interest can be protected by limiting instructions or by the discretion of the judge in limiting or forbidding the admission of particularly prejudicial evidence. We also find that defendant's reliance on *United States v. Jackson* (1968), 390 U.S. 570, 20 L.Ed.2d 138, 88 S.Ct. 1209, is misplaced since the selective death penalty section of the Federal Kidnapping Act is a provision with a different purpose and effect than the provision challenged in the case under review. Consequently, we hold, in light of *Ostrand, Owens,* and *Spencer,* that section 24—1(b) is constitutional.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.