THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARY WEATHERS, Defendant-Appellant.

Third District   No. 74-356

Opinion filed July 15, 1976.

STOUDER, J., dissenting.

Robert Agostinelli and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (James Hinterlong and John Breslin, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Mary Weathers appeals from a conviction of carrying a concealed weapon in violation of section 24—1(a)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4)). She was convicted by a jury based on her possession of a .22 magnum derringer which was found in her purse during an inventory search by police after defendant had been detained for violating the curfew provisions of her parole.

She was indicted for a Class 3 felony under the terms of the aggravated penalty provisions of section 24—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(b)). The State alleged that the defendant Weathers had been convicted of a felony within the previous 5 years. The jury found for the State on this allegation and the trial court imposed a sentence of 1 to 3 years in the penitentiary in the case.

On appeal in this court, defendant contends that the police were without authority to arrest her for a mere parole violation which was not otherwise a crime. She also contends that the introduction of evidence at trial concerning her prior conviction, without an appropriate limiting instruction, deprived her of a fair trial. She also contends that, in any event, the State failed to prove the prior conviction beyond a reasonable doubt, so that only the misdemeanor penalty provisions of section 24—1 are applicable.

From the record it appears that Officer Dove of the Rock Island police testified that he and his partner observed an automobile on the night in question which was being driven without headlights on a city street at approximately 3:40 a.m. The officers made a traffic stop and checked the driver's license of the driver. They then asked for identification from the two passengers in the automobile. When defendant Weathers, who was sitting in the back, produced identification, the officers recognized her name from a prior encounter and remembered that she was a parolee. Officer Dove also remembered that one of the conditions of her parole was an 11 p.m. curfew.

By reason of the apparent parole violation, the officers took defendant Weathers to the police station. They attempted to reach defendant's parole officer, but were unsuccessful, and the parole office advised the officers to hold the defendant until the parole officer was available in the

morning. A standard inventory search, during booking procedures, disclosed that there was a gun in defendant's purse.

■■ Defendant first contends that the police had no authority to arrest her for a parole violation which was not a criminal act and that the gun should have been suppressed as evidence, as a result of an illegal arrest. The arrest statute (Ill. Rev. Stat. 1973, ch. 38, par. 107—2) permits a peace officer to effect an arrest whenever:

"(a) He has a warrant commanding that such person be arrested, or

(b) He has reasonable grounds to believe that a warrant for the person's arrest has been issued in this State or in another jurisdiction; or

(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

Insofar as the language of this section is concerned, we agree with defendant that there was no reasonable interpretation of such language which would authorize a warrantless arrest for parole violation since this is not an offense in the sense that it is a violation of a penal statute (Ill. Rev. Stat. 1973, ch. 38, par. 102—15). The State, however, pointed out at the trial, and on appeal, that the provisions of the Unified Code of Corrections pertaining to parole contain the following sentence:

"* * * A sheriff or other peace office may detain an alleged parole or release violator until a warrant for his return to the Department [of Corrections] can be issued." Ill. Rev. Stat. 1973, ch. 38, par. 1003—14—2(c).

The police clearly had authority under this section to detain Mary Weathers for violating the curfew provisions of her parole. This detention would extend until the parole officer could take charge at the earliest opportunity. Defendant argues that such interpretation of the sentence is a result of taking it out of context of the Unified Code provisions concerning parole (see Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—1 *et seq.* and par. 1003—14—1 *et seq.*). While parole violation is a problem for the Department of Corrections, the Parole and Pardon Board, and the individual parole officer, and not normally for the local State's Attorney or the court system, the quoted phrase in section 3—14—2(c) still clearly grants authority to the police to hold an alleged parole violator until a parole officer can take over. Also, where such temporary detention is made, it becomes necessary to hold the person in custody for several hours. Under such circumstances it is clearly permissible for the police to conduct an inventory search normally incident to such detention.

Defendant directs attention to *United States v. Hallman,* 365 F.2d 289 (3rd Cir. 1966), which held that under New Jersey law, police could not arrest a person for a parole violation that was not a crime. Despite the fact that defendant claims the contrary, we find no language in the operative

New Jersey statutes authorizing warrantless detention of alleged parole violators. (N. J. Stat. Ann. §§30:4—118, 123.22 (1964).) The presence of such language in Illinois, however, distinguishes Illinois law from the New Jersey situation, and, therefore, the *Hallman* case cannot be controlling.

■■ We conclude that the police acted within their statutory authority in detaining the defendant for the alleged parole violation and in making the subsequent inventory search from which the evidence was developed to support the conviction in the instant case.

■■ Defendant next argues that she was denied a fair trial when the jury was permitted to consider evidence of a prior felony conviction without any instruction limiting their consideration to the specific purpose for which the evidence was introduced. Though the defense did not tender any such limiting instruction, or even raise the issue in a post-trial motion, defendant now argues that the trial court had the duty to instruct the jury *sua sponte.*

The evidence of the prior conviction was introduced for purpose of proving the applicability of the aggravated penalty provisions of section 24—1(b) of the Criminal Code herein referred to. As indicated in a number of cases, where the State seeks to impose the aggravated penalty provisions, it must prove the prior convictions beyond a reasonable doubt as an element of the crime. (*People v. Owens* (1967), 37 Ill. 2d 131, 132, 225 N.E.2d 15; *People v. Ostrand* (1966), 35 Ill. 2d 520, 529, 221 N.E.2d 499; *People v. Taylor* (1st Dist. 1975), 31 Ill. App. 3d 20, 26, 332 N.E.2d 735; *People v. Johnson* (1st Dist. 1975), 27 Ill. App. 3d 1047, 1052, 327 N.E.2d 219.) The emphasis by defendant Weathers is that such process, which puts a defendant's past criminal activities before a jury, is so prejudicial as to deny defendant due process of law. That contention was rejected in the cases heretofore cited from Illinois and also in *Spencer v. Texas* (1966), 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648, where a similar Texas procedure was challenged.

Defendant argues that the *Spencer* result (a 5 to 4 decision of the Supreme Court) is premised on the giving of instruction to the jury which limits their consideration of the prior conviction to the possibility of an aggravated penalty, and which direct that the prior criminal record is to have no weight in the determination of guilt or innocence generally (385 U.S. 554, 556, 562, 17 L. Ed. 2d 606, 609-610, 613, 615). In the case with which we are concerned, no such instructions were given to the jury. Defendant also notes the prejudice that does accrue to an accused in this situation, has been noted in cases in this State (*People v. Hayes* (1st Dist. 1973), 15 Ill. App. 3d 851, 858-859, 305 N.E.2d 283; *People v. Kelly* (1st Dist. 1966), 66 Ill. App. 2d 204, 214 N.E.2d 290) and also by the trial judge in the instant case, who detected a potential for prejudice in the procedure sanctioned in this State.

The State points out that defendant waived her argument for limiting

instructions by not tendering any for the trial court's consideration or even raising the issue in the post-trial motion. In addition thereto, the evidence of guilt of the basic charge of carrying a concealed weapon, was overwhelming and there really was no doubt that defendant was carrying a handgun in her purse. While the evidence of the prior felony conviction might have been prejudicial, it is difficult to conceive that it could in any way have contributed to the jury verdict of guilty of the charge as made. The failure of the trial court to give a limiting instruction *sua sponte* certainly would have been harmless error on the issue involved in view of the nature of the proof in the case. *People v. Donald* (1st Dist. 1974), 21 Ill. App. 3d 696, 315 N.E.2d 904; *People v. Davis* (1st Dist. 1966), 74 Ill. App. 2d 450, 453-54, 221 N.E.2d 63.

■■ A final contention is made by defendant that the State did not prove her prior felony conviction beyond a reasonable doubt, and that the misdemeanor penalty provisions of section 24—1(b), rather than the felony provisions, must apply. The State introduced an authenticated record of a felony conviction in 1971 (3 years prior to the instant trial) for possession of heroin, in which defendant's name was Mary Weathers.

We agree that the mere identity of names is insufficient to prove the element of identity in a criminal case. (*People v. Dante* (1966), 35 Ill. 2d 538, 540, 221 N.E.2d 409; *People v. Stewart* (1961), 23 Ill. 2d 161, 163-64, 177 N.E.2d 237; *People v. Casey* (1948), 399 Ill. 374, 378-80, 77 N.E.2d 812.) The attempt to show that the defendant in the case is the same "Mary Weathers" who was convicted in the 1971 case, was made by calling to the witness stand Judge Stengel, who presided in the 1971 case. The witness initially stated that the person who appeared in the prior case was "the lady sitting in the chair" in the courtroom. While two other black women, like defendant, were sitting in the courtroom, it was reasonably clear from the record that the judge was referring to the defendant in this cause when he made the identification. A sufficient basis for establishing the identity appears since Judge Stengel said "the defendant Mary Weathers" referring to defendant in the instant case, appeared before him in October 1971, on a prior occasion in court. While the examination of the judge by the prosecutor was not a model for trial advocacy students, the essential point that Mary Weathers was the same person who was convicted in 1971 for possessing heroin was adequately shown beyond a reasonable doubt.

For the reasons stated, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I disagree with the majority's holding the police acted within their statutory authority in detaining the defendant for the alleged parole violation and in making the subsequent inventory search from which evidence was developed to support the conviction. I believe the so-called dentention was an arrest without legal authorization. Accordingly, the fruits of the inventory search following this illegal arrest were not admissible and the conviction should be reversed.

The majority does not expressly characterize the taking of defendant to the police station and the holding of her until the next day as an arrest. They concede the language of the arrest statute (Ill. Rev. Stat. 1973, ch. 38, par. 107—2) permits no reasonable interpretation authorizing the warrantless search for a parole violation since the parole violation in question here is not an offense as defined in the Criminal Code in the sense of constituting a violation of a penal statute (Ill. Rev. Stat. 1973, ch. 38, par. 2—12 and par. 102—15). I agree with this position of the majority. In view of this position, it seems to me the reasoning employed to support the approval of the officer's conduct is inadequate. As an initial observation I would note the failure of the majority to decide whether the defendant was or was not arrested creates an ambiguity tending to confuse rather than resolve the issues. Of course if the defendant was not arrested then any consideration of the arrest statute would be irrelevant.

According to the majority, the officer's conduct is justified by the provision of the Unified Code of Corrections which states that a peace officer may detain an alleged parole violator until a warrant for his return to the Department of Corrections can be issued. (Ill. Rev. Stat. 1973, ch. 38, par. 1003—14—2(c).) My position, harmonious with what I consider the only reasonable reading of the Unified Code of Corrections provision, is that the term "detain" is not the same as "arrest" and the provision necessarily must be read to refer to detention after a lawful arrest. In other words, if a parolee is lawfully arrested for an "offense," as defined in the Criminal Code, after such lawful arrest he may be "detained" for an alleged parole violation until the parole officer can take over. The legislature has specified in the arrest statute (Ill. Rev. Stat. 1973, ch. 38, par. 107—2) the circumstances under which a peace officer may effect an arrest. There is no provision, as the majority concedes, regarding arresting a parolee for an alleged parole violation.

By all definitions and theories of arrest there can be little dispute but that the police officer's conduct constituted an arrest in the usual and customary manner. If this be true then the authority "to detain" in the Corrections Act must by synonymous with or include the authority "to arrest."

The majority relies on the following provision: "* * * A sheriff or

other peace officer may detain an alleged parole or release violator until a warrant for his return to the Department [of Corrections] can be issued." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—14—2(c).) Reading this provision in conjunction with the arrest statute, it seems if the legislature meant to authorize peace officers to arrest parolees for alleged parole violations they might have included it in the arrest statute. Furthermore, the use of the word detain rather than arrest in the Code of Corrections provision indicates the legislature meant something other than arrest. In addition, the legislature could have easily stated peace officers have the authority to arrest parole violators for alleged parole violations yet they ·did not choose to do so. The authority to arrest parolees for alleged violations of their parole was specifically granted to the supervising officer within the Department of Corrections to issue a warrant. (Ill. Rev. Stat. 1973, ch. 38, par. 1003—14—2(c).) A cardinal rule of statutory construction is that where different words are used in the same statutory provision such words are deemed to have different meanings unless a contrary intention is manifest. Since the statute refers to arrest warrants, it follows that the authority "to detain" must mean something different unless other language makes it clear that no difference in meaning was intended. If a different meaning is harmonious with the other provisions of the statute then such meaning should be employed and as applied to the facts of this case the authority "to detain" should not be deemed to mean or include the authority "to arrest." In this connection it should be noted that the relation between parole officers and parolees is a different relation than that between peace officers and parolees. The former is considered somewhat akin to *parens patriae* since there is some basis that the authority of a parole officer in relation to his parolee justifies a broader scope of authority and more flexibility in the officer's conduct.

The provision in the Code of Corrections granting the authority to peace officers to detain alleged parole violators allows peace officers to hold a parolee who has been lawfully arrested. This would permit the parolee's retention in custody where the State elects not to prosecute the criminal charges and also may prevent the parolee's release on bond. The condition precedent ·to the peace officer holding or detaining the parolee must be a lawful arrest. Nowhere in the Code is there authority for a peace officer to arrest a parolee for an alleged parole violation.

In summary, I believe the defendant was arrested for a parole violation, not a criminal offense, and that such arrest was without legal authority. Accordingly, any evidence seized as a result of the illegal arrest should have been suppressed.