**12-2584-cr**
*United States v. Bernacet*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

August Term, 2012

(Argued: May 1, 2013      Decided: August 1, 2013)

Docket No. 12-2584-cr

———————————————

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

RONNIE BERNACET,

*Defendant-Appellant.*

———————————————

Before:
SACK, WESLEY, AND CARNEY, *Circuit Judges.*

———————————————

Appellant Ronnie Bernacet appeals from a judgment of conviction, entered by the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*), of possessing a handgun after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Bernacet asserts that (1) the search of law enforcement databases at a traffic checkpoint rendered that stop an unreasonable seizure of his person in violation of the Fourth Amendment; (2) officers lacked probable cause to believe that he was violating his parole; and (3) because a parole violation does not provide a lawful basis for a warrantless arrest in New York, his

1

arrest for a parole violation was unconstitutional. We hold that (1) the *de minimis* additional time taken to search a database did not render the traffic checkpoint an unreasonable seizure; (2) officers had sufficient probable cause to believe that Bernacet was violating his curfew; and (3) the New York law prohibiting warrantless arrests for parole violations that are not themselves crimes or offenses is a state "arrest rule" subject to *Virginia v. Moore*, 553 U.S. 164 (2008), and Bernacet's arrest was not unconstitutional. We therefore AFFIRM the district court's judgment.

AFFIRMED.

_____

DARRELL B. FIELDS, Appeals Bureau, Federal Defenders of New York, Inc., New York, NY, *for Appellant Ronnie Bernacet.*

MATTHEW L. SCHWARTZ, Assistant United States Attorney (Iris Lan, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee United States of America.*

_____

WESLEY, *Circuit Judge*:

Ronnie Bernacet appeals from a judgment of conviction entered against him in the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*) following a one-day bench trial on October 25, 2011. Bernacet was convicted of one count of possessing a firearm following a conviction for a felony, in violation of 18

U.S.C. § 922(g)(1). The district court sentenced Bernacet to 57 months' imprisonment and three years' supervised release.

Bernacet asserts that (1) the use of a criminal history database search at a routine traffic checkpoint rendered the stop an unconstitutional seizure of his person; (2) the police lacked probable cause to believe that he was violating his parole; and (3) warrantless arrests for parole violations are unconstitutional in New York. We disagree and find that: (1) the criminal history database search was a *de minimis* extension of the constitutional traffic checkpoint; (2) the police had probable cause to believe that Bernacet was violating his parole; and (3) Bernacet's arrest was constitutional, notwithstanding state laws prohibiting officers from arresting parole violators without a warrant in the absence of a crime or offense. We therefore affirm the judgment of the district court.

**Background**

On October 5, 2010, New York Police Department ("NYPD") officers conducting a two-hour scheduled traffic-safety vehicle checkpoint in the Bronx stopped motorists to check

3

their driver's licenses and vehicle registrations.  They collected licenses from only the drivers and ran each driver's license through NYPD's "FINEST" system using a mobile device terminal ("MDT") in the squad car.  This "generate[d] a report from the New York Statewide Police Information Network ('NYSPIN'), which includes data from multiple sources, including" Federal Bureau of Investigation ("FBI") databases, New York State law enforcement records, and New York Department of Motor Vehicle ("DMV") records.  Callahan Dec.  "An officer cannot . . . elect to run a FINEST search from an MDT through some but not all of these databases."  *Id.*  It typically took less than one minute to run each of the license checks conducted at the stop. *Id.*  Officer Patrick Callahan, who had conducted "approximately 100 vehicle safety checkpoints at that location" during his 22 years with the NYPD, ran licenses through the FINEST system.  *Id.*  The checkpoint resulted in two felony arrests, including Bernacet's.

Bernacet pulled up to the checkpoint at approximately 11:45 p.m.  He gave his driver's license to Officer Ramon Garcia, who passed it to Callahan.  When he ran Bernacet's license, Callahan noticed that Bernacet was on parole.

4

Knowing that parolees in New York customarily have 9:00 p.m. curfews, he instructed Garcia to "check it out."  *Id.* Garcia confronted Bernacet about his suspected parole violation.  Garcia contends that Bernacet replied that "he forgot and was sorry."  Garcia Dec.  Bernacet "has claimed variously that he replied, 'What, I'm on violation of parole?' and 'I don't have a curfew my parole officer know I am here [sic].'"  *United States v. Bernacet*, No. 11-cr-00107-LTS, 2011 U.S. Dist. LEXIS 101258, at *3 (S.D.N.Y. Sept. 7, 2011) (citations omitted).

Garcia asked Bernacet to step out of the car.  Garcia maintains that he then saw a handgun protruding from Bernacet's pocket; Bernacet alleges that the firearm was not discovered until Garcia frisked him.  *Id.*  Garcia then arrested Bernacet.  A frisk incident to the arrest revealed a gravity knife in addition to the loaded, .25-caliber Armi-Galesi-Bresci semi-automatic pistol.  After receiving his *Miranda* warnings, Bernacet made several incriminating statements.  *Id.*

## Discussion

Bernacet contends that the officers (1) should not have searched law enforcement databases at a traffic safety

checkpoint, (2) did not have probable cause to believe that he was violating his parole, and (3) were not authorized under state law to arrest him for a parole violation, and that therefore his arrest was unconstitutional. Success on any of these claims would require suppression of the handgun and incriminating statements Bernacet made pursuant to his arrest. We hold that the NYSPIN search was reasonable; the officers had probable cause to believe that Bernacet was violating his parole; and his warrantless arrest was not unconstitutional. The district court's decision to admit the handgun and Bernacet's incriminating statements was therefore proper. Accordingly, we affirm Bernacet's conviction.

I. **Use of Drivers' Licenses to Search Law Enforcement Databases at the Traffic Stop Was Reasonable**

Bernacet does not challenge the legality of the traffic stop itself, and he does not argue that the search of law enforcement databases unconstitutionally infringed his privacy interests.[1]  Rather, he contends that the NYPD's

---

[1] We construe Bernacet's challenge as related to the constitutionality of the law enforcement database search during an otherwise constitutional traffic stop, which "effectuate[d] a seizure within the meaning of the Fourth Amendment." *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000).  Insofar as he intends to challenge the use of the NYSPIN database as a search, and not because it prolonged the seizure, this claim is devoid of merit.  "[T]he government's matching of a lawfully obtained identification record against other records in its lawful

6

search of law enforcement databases at a traffic stop was constitutionally unreasonable because it was not closely related to the purpose of the checkpoint. In light of the *de minimis* intrusion on motorists that was imposed by the law enforcement database search, the traffic stop as conducted was constitutional.

### A. The Government's Interests Outweighed the Drivers' Interests in This Fixed, Traffic-Safety Checkpoint

The Supreme Court has endorsed the government's interest in conducting a fixed checkpoint to monitor traffic safety as a benefit that outweighs drivers' privacy interests. In *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), the Court struck down roving stops of automobiles without any particularized suspicion. However, the Court suggested that "[q]uestioning of all oncoming traffic at roadblock-type stops" was a lawful alternative method to provide for traffic safety. *Id.* In *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000), the Court struck down drug interdiction checkpoints while noting that its holding "d[id] nothing to alter the constitutional status of . . . the type of traffic

---

possession does not infringe on an individual's legitimate expectation of privacy." *Boroian v. Mueller*, 616 F.3d 60, 67 (1st Cir. 2010) (collecting cases). Police officers are permitted to look up anyone's parole status at any time; the only intrusion into privacy interests here was the requirement that motorists wait while the police did so.

7

[safety] checkpoint that we suggested would be lawful in *Prouse*."

In this case, the traffic safety checkpoint was conducted at an "accident prone location in the impact zone," and officers processed 49 cars in two hours. Vehicle Checkpoint Form.[2] The waiting times that each car experienced are fairly characterized as "brief" and "no more onerous than [delays] that typically accompany normal traffic congestion." *Illinois v. Lidster*, 540 U.S. 419, 426 (2004); *see also Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 452 (1990)(stating that the "'objective' intrusion" on motorists subjected to checkpoint stops is "measured by the duration of the seizure and the intensity of the investigation"). This traffic safety checkpoint was thus lawful, and is not on its own challenged by Bernacet.

**B. Gathering Additional Information Did Not Make the Stop Unconstitutional**

Bernacet argues, however, that the addition of law enforcement database searches renders unconstitutional the otherwise lawful traffic checkpoint. The search of the

---

[2] We note that the record on appeal seems to indicate that 65 NYSPIN checks took place (from 10:22 p.m. to 11:59 p.m.), 49 vehicles were pulled over, and no passengers' records were searched.

NYSPIN databases took approximately one minute per motorist; of that one minute, some portion was consumed by the search of DMV records.[3] Dist. Ct. Doc. 20-4. The fact that "ordinary criminal wrongdoing," *Edmond*, 531 U.S. at 38, was uncovered in the course of an otherwise lawful checkpoint designed for a permissible purpose does not invalidate the checkpoint or the arrest. *Lidster*, 540 U.S. at 423. The police encountered information suggesting that a parole violation was ongoing; the Fourth Amendment did not require them to ignore this information merely because the officers' primary focus was on traffic safety. "The law does not require the police to ignore evidence of other crimes in conducting legitimate roadblocks." *United States v. Lopez*, 777 F.2d 543, 547 (10th Cir. 1985); *see also United States v. Morales*, 788 F.2d 883, 886 (2d Cir. 1986).

The duration of the stop was not significantly increased by the fact that the MDTs search multiple databases, including law enforcement databases. Although our decision in *United States v. Harrison*, 606 F.3d 42 (2d Cir. 2010), related to traffic stops instead of checkpoints,

---

[3] Although it is difficult to discern the duration of each search, the record reflects, for example, that from 11:23 p.m. to 11:29 p.m. Callahan ran eleven separate license checks through the MDT. Dist. Ct. Doc. 20-4.

it applies with equal force in this context, where the initial stop is not challenged.  In *Harrison*, we wrote that "an officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."  *Id.* at 45 (internal quotation marks and alteration omitted); *see also Lidster*, 540 U.S. at 427-28.

Finally, we note that Bernacet does not argue that the checkpoint was illegal in itself or that the stated purpose of protecting traffic safety in an accident prone location was pretextual.  He argues, instead, that it was improper for the police, at a lawfully conducted traffic safety checkpoint, to search for parole status in addition to DMV records.  If he were able to establish that the checkpoint was actually conducted for basic crime control purposes and not for vehicle safety reasons, then we would likely find the checkpoint unconstitutional. *Edmond*, 531 U.S. at 41.

**II.      Officers Had Probable Cause to Believe that Bernacet Was Violating His Parole**

Bernacet contends that the officers lacked probable cause to believe that he was violating his parole because

they had no evidence that he had a curfew as a condition of his parole. Bernacet points out that, although he did have a 9:00 p.m. curfew, curfews are not a mandatory condition of parole in New York State. N.Y. State Parole Handbook 2010 at 21-22. He avers that it was unreasonable for the police to assume that he had a 9:00 curfew as a condition of his parole. We disagree.

Callahan had probable cause if "the facts and circumstances within [his] knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that" Bernacet was committing a parole violation.[4] *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (alterations omitted) (quoting *Beck*

---

[4] Insofar as Callahan had probable cause, it transferred to Garcia when Callahan told him that Bernacet was violating his curfew. We do not rely on Bernacet's response when Garcia confronted him regarding his parole violation, though it may have contributed to Garcia's probable cause calculation. Garcia reported that Bernacet apologized for the violation; Bernacet has provided different and inconsistent versions of his reply. *United States v. Bernacet*, No. 11-cr-107-LTS, 2011 U.S. Dist. LEXIS 101258, at *3 (S.D.N.Y. Sept. 7, 2011). We are puzzled as to why the district court declined to make a factual finding as to Bernacet's response. *Id.* at *2-3.

Similarly, the district court declined to credit either Garcia's "claims that a gun was visibly protruding from [Bernacet's] back pocket" or Bernacet's assertion "that his back pockets were deep enough that the gun was not visible" until he was frisked. *Id.* at *3. We assume for purposes of this appeal that Garcia could not rely on the visibility of the handgun to establish probable cause.

11

*v. Ohio*, 379 U.S. 89, 91 (1964)).  The district court appears to have based its holding on the facts that Callahan "knew that [Bernacet] was on parole.  He knew that parolees are customarily subject to 9:00 p.m. curfew as a condition of their parole.  He also knew that, when [Bernacet] was stopped at the checkpoint, the time was approximately 11:30 p.m." *Bernacet*, 2011 U.S. Dist. LEXIS 101258, at *7.

Bernacet argues that there was no probable cause because (1) curfew is not a mandatory condition of parole and (2) the NYSPIN search result screenshot submitted to the court did not contain information related to the terms of Bernacet's parole.  Otherwise, Bernacet "has not challenged the reasonableness of Officer Callahan's belief, established over the course of 20 [sic] years of experience, that a 9:00 p.m. curfew is customarily imposed on parolees." *Id.* Although he had the opportunity, Bernacet declined to cross-examine Callahan about his affidavit.  Callahan's affidavit is the only evidence on the record regarding the likelihood that a New York parolee had a 9:00 p.m. curfew.

We read Callahan's affidavit to suggest that a high percentage of New York parolees have 9:00 p.m. curfews.  No evidence adduced at the suppression hearing suggests

12

otherwise.  Callahan's 22-year NYPD experience that "New York parolees customarily have a curfew [of] 9:00 p.m.," Callahan Dec., which Bernacet declined to challenge given the opportunity, constitutes "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing" that such a curfew existed in this case.  *Amore*, 624 F.3d at 536.  The report from the NYSPIN database firmly established Bernacet's parole status and his presence on the road shortly before midnight established that he was breaking a 9:00 p.m. curfew if he had one.  Taken together, this evidence was sufficient to provide Callahan with probable cause to believe that Bernacet was violating his parole.

**III.  Illegal Warrantless Arrests for Parole Violations Are not Unconstitutional Seizures**

Bernacet contends that the fruits of a search incident to a warrantless arrest for a parole violation are inadmissible because New York has forbidden warrantless arrests for parole violations that are not independently crimes or offenses.  We agree that Bernacet's arrest was illegal under New York law but conclude that it was constitutionally permissible.  The exclusionary rule therefore does not apply.

### A. New York Law Prohibited Bernacet's Warrantless Arrest for Violating His Curfew

The district court determined that Bernacet's arrest was permissible under New York law. Bernacet, citing *People v. Bratton*, 8 N.Y.3d 637 (2007), contends that the district court erred. We agree that *Bratton* extends to arrests by police officers and that Bernacet's arrest was therefore unlawful under New York law.

In *Bratton*, the New York Court of Appeals held that warrantless arrests by parole officers for parole violations committed in their presence violate New York law if the parole violation does not otherwise constitute a crime or offense. *Id.* at 641. Bratton, an Ithaca-based parolee, refused to permit two parole officers to enter his apartment to obtain a sample for a urinalysis test. *Id.* at 639. Bratton attempted to leave; the parole officers arrested him. *Id.* at 639-40. Relying heavily on the legislative history of the New York statutes permitting parole officers to make arrests, the Court of Appeals held that there was "a considered legislative choice" constricting the warrantless arrest authority of parole officers in New York. *Id.* at 640-643. The Court of Appeals held that refusal of urinalysis was "not an offense within the meaning of section

14

10.00(1) of the [N.Y.] Penal Law . . . that would independently justify a peace officer in making a warrantless arrest if committed in his presence."  *Id.* at 643.  Bratton's custody was therefore unlawful and his charge of resisting arrest was dismissed.  *Id.* at 641.

Seeking to distinguish *Bratton*, the district court relied on its view that the statute authorizing parole officers to make warrantless arrests differs from that authorizing police officers to make warrantless arrests. *Bernacet*, 2011 U.S. Dist. LEXIS 101258, at *9.  However, "[t]he rules governing the manner in which a peace officer may make an arrest, pursuant to section 140.25, are the same as those governing arrests by police officers, as prescribed in section[s] 140.15 [and 140.10]."  CPL N.Y. 140.27(1). The statutes conferring warrantless arrest authority on parole and police officers are identically worded:[5] a police officer or a parole officer "may arrest a person for [a]ny offense when he has [probable] cause to believe that such person has committed such offense in his presence."  CPL N.Y. 140.25(1)(a), 140.10(1)(a).

---

[5] The only textual difference between the statutes is that CPL N.Y. 140.10(1)(a) permits a police officer to make an arrest when "he **or she**" has probable cause.

The authority to make a warrantless arrest for parole and police officers alike relies on New York's definition of an "offense." *See Bratton,* 8 N.Y.3d at 643 (reading "offense" in CPL N.Y. 140.25(1)(a) to refer to N.Y. Penal L. § 10.00(1)). The *Bratton* Court held that the only parole violations that are "offenses" for the purpose of this statute are those that "would independently justify" a warrantless arrest even if they were not a violation of parole. *Id.* Staying out later than 9:00 p.m. does not qualify. Bernacet's arrest for his curfew violation was not authorized by New York law.

**B. Bernacet's Arrest Was Constitutionally Permissible**

But, not every arrest that is illegal under state law violates the United States Constitution. *See, e.g., United States v. Wilson*, 699 F.3d 235, 244 (2d Cir. 2012). In *Whren v. United States*, 517 U.S. 806, 815 (1996), the Supreme Court held that plainclothes police officers were constitutionally authorized to seize a vehicle and its occupants based on probable cause that the driver had committed a relatively minor traffic infraction, notwithstanding state regulations that permitted such officers to enforce traffic laws "only in the case of a

16

violation that is so grave as to pose an *immediate threat* to the safety of others." *Id.* (internal quotation marks omitted, emphasis retained). The Court wrote, "[P]olice enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable, and can be made to turn on such trivialities." *Id.* (internal citation omitted).

Based in part on this reasoning, in *Virginia v. Moore*, 553 U.S. 164, 167 (2008), the Supreme Court upheld the arrest of a driver for driving on a suspended driver's license, despite Virginia laws requiring the officers to issue a summons instead of making an arrest when handling such an infraction. The Court held that "an arrest based on probable cause but prohibited by state law" is constitutional. *Id.* at 166. Bernacet maintains that *Moore* does not apply to parole violations because not all such violations are defined as "crimes" or "offenses" under New York law, and further that parole violations should be treated differently, as a constitutional matter, from other types of infractions. Neither argument is persuasive.

17

### 1. *Moore* Applies to Arrests for Parole Violations

Bernacet asks us to hold that *Moore* applies to "crimes," "offenses," and "violations," but not to parole violations, which he asserts, are not all "offenses" or "crimes" under state law. He points to several cases that use various terms to categorize the types of infractions that support a constitutionally valid arrest.[6] Aside from semantics, however, he does not identify a basis to distinguish parole violations from other relatively minor infractions that the Supreme Court has held can constitutionally support an arrest. These include minor misdemeanors and traffic offenses. For example, in *Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001), the Court held that the Fourth Amendment does not forbid "a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." *See also Moore*, 553 U.S. at 167 (for driving on a suspended license).

---

[6] Bernacet directs us to, *inter alia*, *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (permitting warrantless arrests "where there is probable cause to believe that a **criminal offense** has been or is being committed") (emphasis added); *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012)(same for an "**offense**") (emphasis added); *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (same for "a **crime**") (emphasis added).

18

It is true that state *substantive* criminal law can render an arrest unconstitutional by altering the legal status of the underlying conduct. For example, in New York police may constitutionally arrest a 21-year-old man based on probable cause to believe he has had sexual intercourse with a 16-year-old. *See* N.Y. Penal Law § 130.25. However, police could not constitutionally arrest the same 21-year-old man based on the same suspicions in Connecticut (where the age of consent is 16. Conn. Gen. Stat. § 53a-71(a)(1)).

However, the Fourth Amendment does not incorporate state *procedural* criminal law. "[W]hile States are free to regulate [warrantless] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Moore*, 553 U.S. at 176. The legality of warrantless arrests for parole violations "var[ies] from place to place and from time to time," *id.* at 172 (internal quotation marks omitted). In fact, even New York permitted such arrests before 1977. *See Bratton*, 8 N.Y.3d at 642-43. "Fourth Amendment protections are not 'so variable.'" *Moore*, 553 U.S. at 172 (quoting *Whren*, 517 U.S. at 815).

Under New York law, parole violations are not "offenses" or "crimes" for the purpose of determining

19

whether officers are authorized to make a warrantless arrest of a person violating his parole.  But this limitation on the power to arrest does not mean that violating parole does not implicate New York substantive law.  The legality of Bernacet's arrest at New York law therefore does not end, or even inform, the constitutional inquiry.  "Read together, *Moore* and *Whren* stand for the proposition that the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and that the violation of such restrictions will not generally affect the constitutionality of a seizure supported by probable cause." *Wilson*, 699 F.3d at 243.  Bernacet's claim is of a constitutional dimension; it cannot be measured with a state law ruler.

### 2. Bernacet's Parole Violation Provided a Reasonable Ground for Arrest

Bernacet further contends that parole violations have a special status that takes them outside the ambit of *Moore*.  We disagree.

First, even New York courts do not interpret *Bratton* as speaking to the constitutional validity of a warrantless arrest of a parole violator.  For example, custody that is illegal solely because it is premised on an improper

20

warrantless arrest does not necessarily provide grounds for *habeas* relief: that custody may violate state law, but it is not unconstitutional. *People ex rel. Rouse v. N.Y. State Div. of Parole*, 864 N.Y.S.2d 230, 235-36 (Sup. Ct. Bronx Cnty. July 25, 2008). Furthermore, before *Bratton*, the New York Appellate Division "focus[ed] . . . on the narrow question of whether a violation of the statute requiring the issuance of a parole violation warrant . . . require[d] suppression . . . [and] conclude[d] that it does not."[7] *People v. Dyla*, 142 A.D.2d 423, 439 (2d Dep't 1988). "[N]either the Federal nor the State Constitutions, according to their language and history, require the suppression of evidence gathered as a result of a 'seizure' which is not 'unreasonable' and hence not unconstitutional, solely on the grounds that the seizure may be considered violative of some State statute, ordinance or regulation."[8]

---

[7] *Dyla* is compatible with and survives *Bratton;* the Appellate Division expressly "d[id] not decide[] whether a violation of parole constitutes an 'offense' (*see*[] Penal Law § 10.00[1]) so that the warrantless arrest may be validated on this basis." *People v. Dyla*, 142 A.D.2d 423, 434 n.3 (2d Dep't 1988).

[8] Other state courts have similarly resolved the question at issue in *Dyla.* In *People v. Weathers*, the Appellate Court of Illinois upheld the warrantless arrest of a parolee for a curfew violation, finding such arrests lawful in Illinois (and presumptively constitutional); the court rejected her claim that

*Id.* at 434 (citations omitted).

Second, New York has previously permitted warrantless arrests for all parole violations, suggesting that such arrests pose no inherent constitutional dilemma. Before 1978, "[i]n any case where a parole officer ha[d] [probable] cause to believe that [a] parolee ha[d] violated the conditions of his parole in an important respect, such parole officer [could] retake such parolee and cause him to be temporarily detained without a warrant." Former N.Y. Correct. L. §§ 216, 829(3) (both repealed 1978).[9] *Bratton* acknowledges that "an exception to the warrant requirement for those violations taking place in a parole officer's presence [might] make sense," 8 N.Y.3d at 641, but notes that there was "a considered legislative choice" to forbid this authority. *Id.* at 642. The legislation has changed since 1978, but the constitutional analysis has not.

the fruits of the search incident to her arrest should be excluded. 40 Ill. App. 3d 211, 213-14 (1976). In *Medlock v. State*, the Court of Appeals of Arkansas held that a warrantless arrest of a parolee, though illegal, was supported by probable cause and denied a motion to suppress. 79 Ark. App. 447, 461-62 (Div. IV 2002), *aff'd by* No. CR-03-839, 2004 WL 2191165 (Ark. Sept. 30, 2004) (*per curiam*). Neither court found a Fourth Amendment problem with arrests supported by probable cause that a parole violation occurred. The constitutionality of warrantless arrests for parole violations does not vary by state. *Moore*, 553 U.S. at 176.

[9] A similar rule still exists for probationers. *See* CPL N.Y. 410.50(4).

22

Third, parole violations are not inherently less serious than other minor offenses for which the Fourth Amendment permits warrantless arrests.  The Supreme Court has held that warrantless arrests are lawful, for example, in the case of a mother arrested in front of her children for driving without a seatbelt (among other minor infractions), *Atwater,* 532 U.S. at 323-24; for impersonating a police officer when helping a motorist change a tire, *Devenpeck v. Alford*, 543 U.S. 146, 148-49 (2004); for driving with a suspended license, *Moore*, 553 U.S. at 166; and for speeding, *Arkansas v. Sullivan*, 532 U.S. 769, 769 (2001) (*per curiam*).

While violating a curfew imposed as a condition of parole is not the gravest of offenses, it is no less reasonable a ground for detention.  Indeed, although an offense need not lawfully result in a custodial sentence for it to serve as a basis for a constitutional arrest, *Sullivan*, 532 U.S. at 771; *Atwater*, 532 U.S. at 348-50, under New York law, a parole violation is a lawful ground for a parolee's arrest and incarceration, reflecting the gravity that the State accords the offense.  *See* N.Y. Exec. L. § 259-i(3).  Without defining the limits of *Moore*, we

23

conclude that probable cause regarding a violation that, if proven, could result in the loss of liberty provides sufficient grounds for a constitutional warrantless arrest.

Bernacet's arrest was constitutionally permissible; the fruits of the search incident to his arrest were therefore properly admitted. *Sullivan*, 532 U.S. at 771.[10]

**Conclusion**

Bernacet's checkpoint stop was legal and the NYPD had probable cause to believe that he was violating his parole. His arrest by the police staffing the checkpoint, while contrary to New York law, was constitutionally reasonable. The search incident to his arrest uncovered a handgun; because the arrest was constitutionally proper, this weapon was properly admitted at Bernacet's trial.

---

[10] We note, of course, that nothing restricts the authority of the States to "accord protection against arrest beyond what the Fourth Amendment requires." *Virginia v. Moore*, 553 U.S. 164, 180 (2008) (Ginsburg, *J.*, concurring). The Supreme Court has expressed a preference for statutory, rather than constitutional, limitations on the arrest power. "It is of course easier to devise a minor-offense limitation by statute than to derive one through the Constitution, simply because the statute can let the arrest power turn on any sort of practical consideration without having to subsume it under a broader principle." *Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001). States are free to develop their own remedies for illegal arrests as well; however, suppression under the Fourth Amendment is available only for constitutional violations.

For the foregoing reasons, the opinion and order of the district court is **AFFIRMED.**